Filed 4/28/25  P. v. Sanchez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOHN MICHAEL SANCHEZ,<br><br>  Defendant and Appellant. | B332655<br><br>Los Angeles County<br>Super. Ct. No. KA102162 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

After a hearing under section 1172.75, the trial court resentenced John Sanchez. The trial court then denied Sanchez a hearing pursuant to section 1172.1 about seven months later. We affirm and remand for the trial court to correct Sanchez's custody credits. Statutory citations are to the Penal Code.

I

On May 29, 2013, Sanchez pleaded no contest to driving under the influence of alcohol. He had been driving about 130 miles per hour with a blood alcohol content of 0.13 percent. The court placed him on probation and ordered him to surrender himself for a 60-day jail sentence on *June 14*. The court ordered Sanchez not to drive and read him a *Watson* advisement, warning him that continuing to drink and drive could lead to a murder charge if he killed someone.

On *June 7*, a week before he was supposed to surrender, Sanchez and his girlfriend, Rachel Nixon, went to a club in Rancho Cucamonga and had several drinks. Sanchez was driving them back at about 2:30 a.m. An earlier accident had caused traffic, and the cars on Sanchez's side of the highway were stopped. Sanchez failed to stop and slammed into a car, propelling the car into a wall. Sanchez hit two more cars before his car hit the center divider wall.

Cassandra Bonilla was driving the first car Sanchez hit, with four passengers. The impact threw passengers Joanna Balderas and Alexandria Garcia out of the car. Balderas died without regaining consciousness. Garcia's leg was lacerated and her ankle broken. The crash fractured Bonilla's femur, dislocated her hip, and caused her brain to bleed. Passenger Vincent Canales suffered a subdural hemorrhage and damage to his

2

short-term memory.  The collision inflicted painful injuries upon passenger Amaysa Alvarez.

Robert Estrado-Ramos drove the second car, with two passengers.  Marlene Jaramillo drove the third car, with two passengers.  Four of these people suffered trauma to their backs and necks.

When police arrived, Sanchez claimed Nixon, who was still trapped in the passenger seat, had been the driver.  He also insisted the officers call his father, a lieutenant in the Los Angeles Police Department.  At 5:30 a.m., Sanchez had a blood alcohol content of 0.14 percent.  Nixon had to be resuscitated at a hospital and had multiple fractures and lacerations requiring surgery and prolonged hospitalization.

Sanchez entered an open plea and pleaded no contest to gross vehicular manslaughter while intoxicated, driving under the influence causing injury, driving with a blood alcohol content of 0.08 percent or above, causing injury, and driving with a suspended license for a prior driving under the influence conviction.  Sanchez admitted to three enhancements for causing great bodily injury, four enhancements for causing bodily injury, several prior convictions, one strike, and a serious felony conviction.

The trial court sentenced Sanchez to a total of 30 years 4 months.  The sentence was made up of 20 years for vehicular manslaughter (10 years for the high term, doubled); 16 months for driving under the influence causing injury (one-third of the midterm doubled); three years for the three great bodily injury enhancements (one-third of the three-year terms); five years for a prior serious felony conviction; and one year for a prior prison term.

In *March 2023*, the trial court recalled Sanchez's sentence under section 1172.75 because changes in the law had made the provision providing enhancements for a prior prison term no longer valid in his case. Sanchez's counsel and the prosecutor both submitted briefing addressing additional changes in the law, including those relating to section 1385. Sanchez identified four enumerated mitigating factors he argued applied: 1) multiple enhancements alleged in a single case; 2) the enhancement could result in a sentence over 20 years; 3) the current offense is connected to prior victimization or childhood trauma; and 4) the enhancement is based on a prior conviction that is over five years old. (§ 1385, subd. (c)(2)(B), (C), (E) & (H).) He submitted a report of a forensic neuropsychological examination finding that Sanchez exhibited characteristics consistent with "drug baby syndrome," which made him particularly susceptible to drug and alcohol addiction. Sanchez submitted substantial documentation relating to the mitigation factors, including his postconviction behavior.

At the *July 2023* hearing, Sanchez stated his remorse. Two victims and several family members and friends of deceased victim Balderas spoke of their loss and pain. The trial court invited argument. The court then eliminated the now-invalid enhancement under section 667, subdivision (b), but otherwise maintained the same sentence, for a total sentence of 29 years 4 months. The court calculated Sanchez's custody credit days as 3,750 days.

On December 28, 2023, the Secretary of the California Department of Corrections and Rehabilitation wrote to the court recommending Sanchez's sentence be recalled and reconsidered under section 1172.1.

The trial court held an informal status conference in *February 2024.* Sanchez's counsel was present; Sanchez was not. The court said it would not hold a second hearing, as this would duplicate the one from seven months before. The only possible difference would be Sanchez's behavior in prison during the last few months, the court said, and even a stellar performance would not prompt the court to change its mind about the sentence.

Sanchez argued section 1172.1 required the trial court to hold a hearing. The court noted Sanchez's objection and declined to set a formal resentencing hearing. The court also corrected an error in calculating the appropriate subordinate term for the great bodily injury enhancements, reducing Sanchez's total term to 27 years 4 months.

## II

Sanchez argues the trial court abused its discretion by failing properly to weigh mitigating factors in section 1385. He also argues the court erred by denying him a hearing. We affirm.

## A

Sanchez argues the trial court failed to follow the statutory directive to give "great weight" to mitigating factors identified in section 1385. (§ 1385, subd. (c)(2).) The record does not support this claim.

A resentencing court shall apply any changes in the law that reduce sentences or provide judicial discretion. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Thus, the changes to section 1385 applied to Sanchez's case once the court undertook to resentence him. Subdivision (c)(2) of section 1385 requires courts to "afford great weight" to evidence of certain mitigating

circumstances, unless the court finds dismissing the enhancement would "endanger public safety." (§ 1385, subd. (c)(2).) The statute defines endangering public safety as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid*.) We review courts' resentencing decisions for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 377–378.)

Sanchez and the prosecutor agree the trial court did not find dismissing the enhancements would endanger public safety. We need not determine whether the court's statement— that it could not make a finding that it was "convinced [Sanchez] has learned his lesson, and once he's released on parole, his life will be much different than it was prior to these events in terms of his behavior"—constitutes a finding that he would endanger public safety. The court's weighing of factors was appropriate even without such a finding.

The court stated twice on the record during the hearing that it had reviewed the materials submitted by both parties, as well as the papers from the previous sentencing hearing. The court acknowledged that Sanchez's "performance while incarcerated is exceptional" and his "stellar reputation in terms of [his] compliance with their rules and regulations."

The court then heard victim impact statements from two passengers in the cars involved in the accident, as well as Balderas's brother, Balderas's cousin, four of Balderas's friends, and the mother of one of Balderas's friends, detailing how the accident affected their lives and their ongoing trauma. Sanchez expressed his remorse.

After these presentations, the court noted it "came into this sentencing hearing this morning thinking that Mr. Sanchez

6

deserves some type of leniency, some type of consideration for [his excellent behavior in prison and taking responsibility by entering an open plea]; but what I've heard this morning from surviving family and certainly victims is this case went beyond the general maxims of pain and suffering to, quite frankly, devastation and destruction of their lives." Despite the passage of 10 years, the "pain, the tragic consequences of Mr. Sanchez's act continues to again devastate this family." "How can Mr. Sanchez's mitigating factors outweigh what I continue to hear on behalf of Joanna [Balderas] as well as the other individuals that were injured and suffered some type of injury as a result [] of Mr. Sanchez's conduct?" The court noted "recent changes in the law, which, again, require this court to focus on those mitigating factors and to presume, quite frankly, mid-term sentencing rather than high term sentencing and, of course, certain exceptions apply." The court went on to impose the high term, as it had previously.

Sanchez argues these statements show that the court considered only the mitigating factors in determining the proper term. Because the court did not repeat this analysis before announcing judgment on the enhancements, Sanchez claims the court did not apply the appropriate factors. This is incorrect.

The court's statements reflect its considered judgment that the aggravating factors, as articulated by the victims' statements, outweighed even the significant mitigating factors that originally led the court to think leniency might be appropriate. (*People v. Walker* (2024) 16 Cal.5th 1024, 1028–1030 [although courts must give great weight to mitigating factors, they can still decline to dismiss an enhancement where it would not be in the furtherance of justice].) A court need not repeat these comments before each portion of its sentencing judgment. We assume trial courts know

7

and follow the law absent evidence to the contrary. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.) This record is fully consistent with this assumption.

B

Sanchez argues the trial court erred in denying him a hearing after the Secretary recommended recalling and resentencing him under section 1172.1. The prosecutor agrees, but argues the error was harmless. The prosecutor is correct.

The error was harmless by any standard. (See *People v. Watson* (1956) 46 Cal.2d 818; *Chapman v. California* (1967) 386 U.S. 18.)

Sanchez argues the denial of a hearing prejudiced him because a different standard would have applied at a section 1172.1 hearing. This argument is unmeritorious.

Sanchez correctly points out that, where the Secretary recommends recall and resentencing, there is a presumption in favor of recalling and resentencing. That presumption is satisfied, however, where the court recalls the defendant's sentence and provides an individualized opportunity for resentencing. (*People v. Braggs* (2022) 85 Cal.App.5th 809, 820 ["the presumption is intended to apply to the initial determination of whether to grant a request to recall and resentence, but that the sentence ultimately imposed by the court is left to its discretion without any further application of the presumption"].) The court gave Sanchez that consideration at the July 2023 hearing. As the court noted, it knew of and exercised its discretion regarding striking the enhancement the Secretary identified at the previous hearing. The only potential changed circumstance would be an additional seven months of good behavior in prison, which the court stated would not, in its view,

8

alter the appropriate sentence. The court's failure to hold a second resentencing hearing was harmless error.

C

The parties agree the trial court erred in calculating Sanchez's custody credits. We remand for the trial court to recalculate Sanchez's custody credits and amend the abstract of judgment.

**DISPOSITION**

We affirm.


                                                    WILEY, J.

We concur:



STRATTON, P. J.



GRIMES, J.